## 65881. ATKINS v. TRI-CITIES STEEL, INC.

DEEN, Presiding Judge.

Lynn Atkins brought a wrongful death action against Tri-Cities Steel, Inc., following the death of her husband who was killed after he came in contact with an electrical cable in the rafters of an industrial building owned by Tri-Cities Steel, Inc.

The Atkins rented a small mobile home from John Young, a shop foreman of appellee and son of the president, which was located on the business premises of Tri-Cities Steel near the industrial building in which Atkins was killed. As the mobile home was located on industrial property, a special permit had to be obtained from the College Park City Council before it could be occupied. William Young, president of appellee, went before the council on February 4, 1981, and requested the permit indicating that he needed someone to reside on the property because of vandalism in the area. The mayor asked if "they looked after the property when they were around" and Young replied, "Yes." The permit was granted. On May 17, 1981, a Sunday, Atkins was playing on the premises, in the area adjacent to the mobile home, with a frisbee and it apparently went on the roof of the industrial building. He attempted to retrieve it and came into contact with an electrical cable in the roof which served an overhead

crane and was killed instantly. His body was found in the rafters of the building. In her affidavit, Mrs. Atkins claims she was never warned of the dangerous condition of the cable or that she was not allowed to enter into the other buildings on the property. She did not know if her husband had been told to stay out or off of the buildings. There were no warning signs posted. The affidavits of John Young and his father state that Atkins' presence on the property provided no benefit to the company and that he was told not to enter or go on any of the buildings. Mrs. Atkins brings this appeal from the grant of summary judgment in favor of appellee. Mrs. Atkins brought a claim under the Workers' Compensation Act, but no award was made because her husband was found not to be an employee within the meaning of the Act, and even if he were, the injury was not sustained during the scope of his employment. *Held:*

The liability of Tri-Cities Steel depends upon whether Atkins, at the time he suffered his fatal injury, was a trespasser, a licensee or an invitee (express or implied). Under OCGA § 51-3-2 (Code Ann. § 105-402), the owner or proprietor of the premises is liable only for wilful or wanton injury to a licensee, whereas under OCGA § 51-3-1 (Code Ann. § 105-401) the landowner or occupier owes an invitee the duty to exercise ordinary care in keeping the premises safe. The duty owed to a trespasser is not to wilfully and wantonly injure him. *Huddle House, Inc. v. Burke,* 133 Ga. App. 643, 647 (211 SE2d 903) (1974).

To determine whether a person is an invitee or a mere licensee, the nature of his relation or contact with the owner or occupier of the premises must be determined. The test is " 'whether the injured person at the time of the injury had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience . . .' " *Brown v. Hall,* 81 Ga. App. 874, 880 (60 SE2d 414) (1950). There must be a mutuality of interest in the subject to which the plaintiff's business related, even if the subject of the business is not for the benefit of the defendant. *American Legion v. Simonton,* 94 Ga. App. 184, 186 (94 SE2d 66) (1956). "[A]n 'invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it.' " *Higginbotham v. Winborn,* 135 Ga. App. 753, 754 (218 SE2d 917) (1975). See also *Davis v. Garden Services,* 155 Ga. App. 34, 35 (270 SE2d 228) (1980). An owner or occupier of land is liable when he fails to warn his invitees of dangers or defects of which he knew or should have known had he exercised ordinary care. *Fulton Ice & Coal Co. v. Pece,* 29 Ga. App. 507 (116 SE 57) (1922); *Brown v. Hall,* supra; *Flint River Cotton Mills v. Colley,* 71 Ga. App. 288 (30

SE2d 426) (1944).

If an invitee does not go beyond that part of the premises to which, as it reasonably appears to him the invitation extends, he does not become a licensee. *Mortgage Comm. Servicing Corp. v. Brock,* 60 Ga. App. 695, 699 (4 SE2d 669) (1939). If, however, he does go beyond that part to which he is invited, he becomes a mere licensee. *Freeman v. Levy,* 60 Ga. App. 861 (5 SE2d 61) (1939); *Augusta Amusements v. Powell,* 93 Ga. App. 752 (92 SE2d 720) (1956).

On oral argument, appellant strongly urged this court to find that Tri-Cities Steel was Atkins' landlord and therefore had a duty to warn of the hazardous nature of electrical cable in the rafters of the industrial building which was located near the trailer. See OCGA § 44-7-14 (Code Ann. § 61-112).

Construing the evidence in favor of the party opposing the motion for summary judgment, we believe a jury could find Atkins was an invitee to the premises because the president of the steel company told the city council it wanted someone on the premises because of vandalism. A jury would be authorized to conclude that the corporation would want him to be visible at various times including weekends. The extent of the invitation would also be a jury question as there was evidence to show that Atkins used the same driveway and mailbox as the company and that he recreated on the premises with knowledge of the company.

In the alternative, there was also some evidence from which a landlord/tenant relationship could be found. For instance, when the president of Tri-Cities Steel appeared at the city council meeting to apply for the permit (rather than John Young, the acknowledged owner of the trailer), he stated: "... we want a permit." The land upon which the trailer was located belonged solely to the company and there was no evidence that John Young leased the land from the company.

As to appellee's argument that Lynn Atkins did not pierce the statement in the affidavits of William and John Young that Billy was told not to enter the buildings, we note that Lynn Atkins was also going to reside in the mobile home and would be providing the same benefit to the company as her husband as well as be exposed to the same dangers on the premises. Her statement that she was never told not to go into any of the buildings would therefore raise an issue of credibility requiring jury resolution of the statements in the Youngs' affidavits as to whether they had in fact told Billy not to enter the buildings.

The cable in the roof of the building does not constitute a mantrap. See *Crosby v. Savannah Elec. &c. Co.,* 114 Ga. App. 193, 198 (150 SE2d 563) (1966) for an extensive discussion of what does and

does not constitute a mantrap.

As there are many issues of fact which can be resolved only by a jury in this extremely confusing case, we must reverse the trial court's grant of summary judgment in favor of appellee.

*Judgment reversed. Banke, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED APRIL 5, 1983 —
REHEARING DENIED APRIL 20, 1983 — 

*M. Shannon Feeney,* for appellant.
*Hugh M. Worsham, Jr., David A. Handley,* for appellee.